CITY OF SAN ANTONIO et al. v. HAYNES.
(No. 2122.)

Court of Civil Appeals of Texas. El Paso.
March 8, 1928.

Rehearing Denied April 12, 1928.

1. **Bridges** �köⁿ4—Space reserved for pedestrians on side of public bridge was "sidewalk" as matter of law.

Space on side of public bridge reserved for use of pedestrians crossing river between two streets was a sidewalk as matter of law.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Sidewalk.]

2. **Municipal corporations** �köⁿ761(2)—Charter held not to restrict city's exemption from liability for defects in sidewalks to those laid and maintained by abutting property owners (San Antonio Charter, §§ 46, 91).

Charter of City of San Antonio (Sp. Acts, 32d Leg. c. 102), § 46, does not restrict city's exemption from liability on account of defects in sidewalks to those which abutting property owners have been compelled to lay and maintain under section 91.

3. **Constitutional law** �köⁿ70(1)—Courts cannot limit city's charter exemption from liability for defects in sidewalks to those constructed and maintained by abutting property owners (San Antonio Charter, §§ 46, 91).

Courts cannot ingraft limitation on broad exemption from liability because of defects in sidewalks, granted by San Antonio Charter (Sp. Acts, 32d Leg. c. 102), § 46, on ground that such exemption should have been restricted to defects in sidewalks constructed and maintained by abutting property owners as required by section 91.

4. **Municipal corporations** ⊦köⁿ763(1)—City is liable for injuries by neglect to maintain streets in reasonably safe condition, subject to charter limitations (San Antonio Charter, § 46).

It is duty of city of San Antonio to maintain its streets in a reasonably safe condition for ordinary use to which they are subjected, and it is liable in damages to those injured by neglect to perform such duty, subject to limitations expressed in San Antonio Charter (Sp. Acts 32d Leg. c. 102) § 46.

5. **Bridges** ⊦köⁿ4—Public bridge forming connecting link in street or other highway is part thereof.

A public bridge spanning a stream, forming a connecting link in a street or other highway, is a part of such street or highway.

6. **Bridges** ⊦köⁿ37—Municipality is liable at common law for injuries from defective bridges constituting part of street.

Common-law liability of municipality for injuries resulting from defective streets, in case of negligence, applies to bridges constituting part of street.

7. **Bridges** ⊦köⁿ46(14)—Jury's finding that portion of bridge, on which plaintiff was injured, was not part of public street, held to require judgment for defendant city.

Jury's finding, not complained of by plaintiff, that portion of bridge on which plaintiff was injured was not part of public street, held to require judgment for defendant city as contrary to allegations of petition on which city's duty to keep bridge in proper state of repair was predicated.

8. **Appeal and error** ⊦köⁿ719(8)—Judgment contrary to verdict is fundamental error requiring correction and rendition of proper judgment by appellate court.

Rendition of judgment contrary to verdict is fundamental error, requiring correction thereof and rendition of proper judgment on verdict by Court of Civil Appeals, though not assigned.

Appeal from District Court, Bexar County; W. S. Anderson, Judge.

Action by Mrs. Violet A. Haynes against the City of San Antonio and others. From a judgment against the City, it appeals. Reversed and rendered in favor of all defendants.

Joseph Ryan, City Atty., of San Antonio, for appellant.

W. M. Groce and A. M. Green, both of San Antonio, for appellees.

HIGGINS, J. While crossing a bridge on Oakland street in the city of San Antonio spanning the San Antonio river, the appellee, Mrs. Haynes, on the night of October 26, 1926, stepped into an opening in the floor of the bridge, in consequence of which she sustained personal injuries, and brought this action against said city, its mayor and commissioners, to recover the damages sustained by her.

The bridge in question connected Oakland and Ninth streets, the two streets being continuations of each other. On either side of the bridge and a part thereof is a walk reserved for the use of pedestrians. The portion of the bridge used for vehicular traffic is between these walks. The walks are separated from that part of the bridge used for vehicular traffic by 4x4 guard rails. The walks are floored with 2x6 boards about four feet long nailed to the stringers of the bridge. On the night in question one of the boards in the walk on the north side was missing, and into this opening Mrs. Haynes stepped. The evidence does not disclose how the board became displaced.

The case was submitted upon special issues which, with the answers returned, are as follows:

"(1) Had the hole or aperture in the bridge upon which plaintiff was injured existed for such a length of time prior to the accident that

the defendant would have discovered the same by exercising ordinary diligence? Answer: Yes.

"(2) Was the city of San Antonio negligent in permitting the hole in said bridge, through which plaintiff claims to have slipped her foot, to have existed at the time alleged in plaintiff's petition? Answer: Yes.

"(2a) Was such negligence of said city-the proximate cause of any injury to plaintiff as alleged in her petition? Answer: Yes.

"(3) If you have answered 'Yes' to the preceding question, then did such negligence directly cause or directly contribute to the accident and any injuries sustained by the plaintiff which are alleged in the petition? Answer: Yes.

"(4) Were defendants negligent in failing to erect a guard or obstruction around the hole in said bridge so as to prevent plaintiff and other persons from using such portion of the bridge? Answer: Yes.

"(5) If you have answered 'Yes' to the preceding question, then did such negligence directly cause 'or directly contribute to the accident and any injuries sustained by the plaintiff which are alleged in the petition? Answer: Yes.

"(6) Is there a long-established custom existing in the city of San Antonio, generally, under which the defendants and other persons having charge of bridges and streets in said city usually and customarily place red lanterns around and near to holes and other defects and obstructions in the streets and bridges of this city as a warning to the public generally of the danger existing by virtue of such hole or defects? Answer: Yes.

"(7) Did the defendants fail to place a red lantern or lanterns around the hole in which the plaintiff fell prior to the time of the accident? Answer: Yes.

"(8) If you have answered the foregoing question in the affirmative, then did such failure constitute negligence as that term has hereinbefore been defined? Answer: Yes.

"(9) If you have answered the preceding question in the affirmative, then did such negligence directly cause or directly contribute to the accident and any injuries sustained by the plaintiff which are alleged in the petition? Answer: Yes.

"(10) Had the planks and material used as a covering for the portion of the bridge set apart for the use of pedestrians in crossing the San Antonio river become loosened and in a dangerous and defective condition prior to the time the accident complained of occurred? Answer: Yes.

"(11) If you have answered the foregoing question in the affirmative, then had such dangerous condition existed for such length of time that defendants in the exercise of ordinary diligence could have discovered same? Answer: Yes.

"(12) If you have answered the foregoing question in the affirmative, then did the maintenance of such bridge in said condition constitute negligence? Answer: Yes.

"(13) If you have answered the foregoing question in the affirmative, then did such negligence directly cause or directly contribute to the accident and any injuries sustained by plaintiff which are alleged in the petition? Answer: Yes.

"(14) Had the nails or fasteners used in hold-ing the planks covering that portion of the bridge reserved for the use of pedestrians become loosened from the frame work of said bridge? Answer: Yes.

"(15) Had such condition existed in said bridge for a sufficient length of time that defendants by exercising ordinary diligence would have discovered the existence of same? Answer: Yes.

"(16) If you have answered 'Yes' to preceding question, then did the maintenance of such bridge in said condition constitute negligence as that term has hereinbefore been defined? Answer: Yes.

"(17) If you have answered 'Yes' to the foregoing question, then did such negligence directly cause or directly contribute to the accident and any injuries sustained by plaintiff which are alleged in the petition? Answer: Yes.

"(18) What amount of money, if any, would, if paid now, reasonably compensate the plaintiff for such injuries, if any, as you may find from the evidence to have been sustained by her, as alleged in the petition? Answer: $4,000.

"(19) Was the portion of the bridge spanning the San Antonio river on Oakland street, in the city of San Antonio, across which plaintiff was walking, as alleged in her petition, on or about the 26th day of October, 1926, a 'sidewalk' at that time? Answer: No.

"(20) Was that portion of the bridge spanning the San Antonio river on Oakland street in the city of San Antonio, upon which plaintiff alleges in her petition she was injured, on or about the 26th day of October, 1926, a part of a public street in said city? Answer: No.

"(21) Did the mayor of the city of San Antonio, or any person having superintendence or control of work on the street for said city, have actual knowledge or actual notice of the hole or aperture in said bridge in which plaintiff claims to have stepped or slipped, on or about the 26th day of October, 1926, for a sufficient length of time before she so stepped or slipped, in which to have repaired said hole or aperture? Answer: No.

"(22) Was plaintiff guilty of negligence in crossing said bridge at the time and in the manner she did? Answer: No."

Judgment was rendered in favor of the individual defendants, and in favor of the plaintiff for $4,000, against the city of San Antonio, from which the latter appeals.

The issues submitted sufficiently indicate the negligent acts alleged against appellant.

Section 91 of the Charter of the City of San Antonio authorizes the city to compel property owners to lay sidewalks in front of their property; to prescribe the kind of sidewalk and to compel the construction and repair of such sidewalks at the cost of the owner of the abutting property.

Section 46 of the Charter, as a condition precedent to the liability of the city for damages of any kind, requires notice in writing of the injury, to be given the mayor within 20 days after the injury is received—

"provided, however, that in no event shall the city of San Antonio be liable in damages to any one on account of any defect in, obstruction on, or anything else in connection with any side-

walk in the city. And provided, further, that in order to hold the city of San Antonio liable in damages to any one on account of any injury caused by any defect in, obstruction on, or anything else in connection with any street, alley or plaza, outside of the said sidewalks along the same, it must be shown that the mayor or some person having superintendence or control of work on the streets for the city had actual knowledge or actual notice of such defect, obstruction or other thing for a sufficient length of time before such injury was received, to have remedied such condition of the street, alley or plaza before the injury was received."

See chapter 102, Sp. Laws 32d Leg. Reg. Sess.

The validity of the quoted portion of section 46 is not questioned. The authorities sustain its validity. Williams v. Galveston, 41 Tex. Civ. App. 63, 90 S. W. 505; Willis v. City of San Antonio (Tex. Civ. App.) 267 S. W. 763, reversed on another question in (Tex. Com. App.) 280 S. W. 569; Lee v. City of Dallas (Tex. Civ. App.) 267 S. W. 1014.

[1] As shown by what has heretofore been said, the bridge upon which appellee was injured spanned the San Antonio river and was the connecting link between Oakland and Ninth streets. It was used by the public generally for vehicular and foot traffic, plank walks on either side being reserved for and used by pedestrians. The plaintiff sustained her injury on the north walk by stepping into a hole in the same. As to these facts there is no conflict. While the jury found that the portion of the bridge where the plaintiff was walking was not a sidewalk, yet, in the state of the evidence, the question was one of law and not of fact. It was a space upon the side of a public bridge reserved for the use of pedestrians and a sidewalk as the term is known in law. 36 Cyc. 440; 3 McQuillan, Municipal Corps. § 1286.

[2, 3] The charter of the city says that in no event shall the city be liable in damages on account of any defect in "any sidewalk" in the city. There is nothing to indicate that this exemption from liability was intended to be restricted to defects in sidewalks which abutting property owners had been compelled to lay and maintain in front of their property. It may be the exemption of the city for liability in case of defective sidewalks should have been restricted to defects in sidewalks constructed and maintained by abutting property owners but it was not so done. The courts cannot ingraft a limitation upon the broad exemption granted by the Legislature to the city in case of injuries caused by defective sidewalks.

All of the evidence showing that the injury was caused by a defective sidewalk, the court should have given the peremptory charge in its favor requested by the city. If this view be incorrect, then we are of the further opinion that, upon the verdict returned, judgment should have been rendered in favor of the city.

[4] It is the duty of the city to maintain its streets in a reasonably safe condition for the ordinary use to which they are subjected. Based upon this duty a liability on the part of the city arises to respond in damages to those injured by a neglect to perform such duty subject to the limitations expressed in section 46 of the Charter.

[5, 6] A public bridge spanning a stream, forming a connecting link in a street or other highway, is a part of such street or highway. Hence the common-law liability of a municipality for injuries resulting from defective streets, in case of negligence, applies to bridges which constitute a part of the street. 6 McQuillan, Munic. Corps. § 2749; 2 Beach on Public Corps. § 1470.

[7] It is upon these rules of law, and these only, that appellee sought to impose liability upon the city for her injury and resulting damage, as is manifest from these allegations in her petition, viz.:

"Plaintiff further avers that the bridge across the San Antonio river upon which plaintiff was walking at the time she fell and sustained the injuries hereinabove set out was erected by the defendant city of San Antonio, and that the same constituted a portion of a public street within the limits of said city or a connecting link between said street over said river, and that the portion of said bridge over which plaintiff was walking at the time she sustained the injuries herein complained of was erected for the use of and was used by the public generally in crossing the San Antonio river on Oakland street."

All of the evidence supports these allegations; but the jury in response to issue 20 found that the portion of the bridge upon which plaintiff was injured was not a part of a public street in said city.

This finding was not complained of by appellee. It is adverse to her. It is contrary to the allegations of her petition upon which is predicated the duty of the city to keep the bridge in a proper state of repair. If the portion of the bridge upon which plaintiff was injured was not a part of a public street in the city of San Antonio, as by the plaintiff alleged, then there is no basis in the pleadings or the evidence for any liability on the part of the city to her. This finding called for judgment in favor of the city.

[8] While this view of the effect of the finding is not presented by appellant, nevertheless it is fundamental error to render judgment contrary to the verdict and requires this court to correct the error, though not assigned, and to render the proper judgment upon the verdict returned.

Upon the views expressed it follows the judgment of the lower court should be reversed and here rendered in favor of appellant. It will be so ordered; but, as the Supreme Court may not agree with us, and to avoid, in such a contingency, the necessity of a remand to this court to pass upon issue°

of fact raised by appellant's assignments and propositions, we rule upon such issues as follows:

Findings 19 and 20 are wholly unsupported by and contrary to all the evidence; the evidence is sufficient to support a finding either way upon issue 21; the verdict and judgment is not excessive; the findings upon the issue of contributory negligence are supported by the evidence.

Reversed and rendered in favor of all defendants.